UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WESLEY JAMES JONES,

                              Plaintiff,

v.                                          Case No. 23-CV-1194-JPS

ALAN JOHNSON, CODY GOULD, and
ALEXANDER HARTZHEIM,          **ORDER**

                              Defendants.

        Plaintiff Wesley James Jones ("Plaintiff"), an inmate currently confined in Prairie de Chien Correctional Institution ("PCCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that various defendants violated his constitutional rights. ECF No. 1. On November 29, 2023, the Court screened Plaintiff's complaint and allowed it to proceed on an Eighth Amendment deliberate indifference claim against Defendants Alan Johnson ("Johnson"), Cody Gould ("Gould"), and Alexander Hartzheim ("Hartzheim") for their failure protect him from a known risk of serious danger. ECF No. 7 at 5.[1]

---

[1] On December 14, 2023, counsel for defendants filed a notice of appearance and acceptance of service for Lana Hartzheim as opposed to Alexander Hartzheim. ECF Nos. 9, 10. On January 11, 2024, Defendants filed a motion to withdraw as attorney and revoke acceptance of service for Defendant Lana Hartzheim. ECF No. 12. Along with this motion, Defendants filed an amended notice of appearance and acceptance of service for Alexander Hartzheim. ECF Nos. 14, 15. On March 8, 2024, the Court granted Defendants' motion to withdraw and directed the Clerk of Court to terminate Lana Hartzheim on the case docket. ECF No. 18.

Now pending before the Court is Defendants' motion for summary judgment. ECF No. 24. Plaintiff filed a brief in opposition, ECF No. 31, and Defendants filed a reply brief, ECF No. 32. The motion is now fully briefed and ready for disposition. For the reasons described below, the Court will grant Defendants' motion for summary judgment and this case will be dismissed with prejudice.

1.   **LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

2.   **FACTUAL BACKGROUND**

In compliance with the Court's scheduling order, Defendants submitted a stipulated set of joint facts, ECF No. 26, and a set of disputed facts, ECF No. 27. As such, the Court takes the following facts from the

parties' statement of undisputed facts, except where explicitly noted, with minor alterations.

Plaintiff is an inmate in the custody of the Wisconsin Department of Corrections ("DOC"). At all times relevant to this lawsuit, he was incarcerated at Dodge Correctional Institution ("DCI"). Hartzheim is currently employed by DOC as a Correctional Officer at DCI. Johnson and Gould are also employed at DCI. Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim. Specifically, he alleges that Hartzheim, Johnson, and Gould knew his cellmate had threatened to attack him, but Defendants took no action to prevent it from happening.

On August 20, 2023, Hartzheim was working his assigned post on Unit 22. Neither Sgt. Alan Johnson nor Lt. Cody Gould was present during any portion of this incident. Neither were working on Unit 22 on August 20, 2023. Around 11:50 a.m., another inmate, Kendrew Wilson ("Wilson"), who was then housed in Cell 5, stopped Hartzheim to inform Hartzheim that he had to get Wilson out of Wilson's cell as he was hearing voices, and they were telling him to hurt his cellmate. Hartzheim asked Wilson if he had any plans to hurt himself or his cellmate. Wilson responded that he did not. Hartzheim informed Wilson that he would ask the Unit Sergeant to come speak with Wilson.

On August 20, 2023, the Unit Sergeant on duty was Sergeant Casey Johnston (not a defendant). As soon as Wilson shared his concerns with Hartzheim, Hartzheim contacted Sgt. Johnston and informed Sgt. Johnson of what Wilson had told him. Sergeant Johnston then stopped by Wilson's cell and asked Wilson what was going on. Wilson responded that the voices were telling him to hurt his cellmate, Plaintiff, because Plaintiff was reading

a book about demons. The parties dispute the exact nature of this conversation; Plaintiff maintains that Johnston told Wilson to "quit lying, you didn't hear voices or see demons, you just want to move cell." ECF No. 27 at 1. Hartzheim was present during this conversation.

Hartzheim looked into the cell and could not see what book Plaintiff was reading but saw that Plaintiff was laying supine on his bed reading a book. Sgt. Johnston then left cell front to call a supervisor, and Hartzheim remained at cell front with Wilson and Plaintiff. Wilson immediately then walked to the bunk area and jumped onto Plaintiff, striking Plaintiff with an elbow to the forehead, followed by closed fist punches towards Plaintiff's upper body area. Plaintiff appeared to block most of the punches with his forearms. Hartzheim told Wilson to stop fighting and told Sgt. Johnston that Wilson was on top of Plaintiff. Sgt. Johnston called over his radio to notify the control bubble of the assault taking place. Hartzheim used the block keys to open up the cell door trap.

When Hartzheim opened the cell door trap, Wilson stopped swinging at Plaintiff but remained on top of him. Hartzheim drew his OC spray and held it at the cell trap opening. The parties dispute what Hartzheim did with the OC spray; Plaintiff asserts that Wilson threatened Hartzheim to not use the OC spray and that Hartzheim withdrew the OC spray while Wilson continued to attack Plaintiff. ECF No. 27 at 2. Sgt. Johnston and Hartzheim gave Wilson directives to sit down, which he initially refused. After multiple directives to sit down, Wilson sat down on a chair while Plaintiff continued to lay supine in bed. Once additional staff arrived on the unit, Sgt. Johnston gave Wilson a directive to come to the cell

door trap and place his hands behind his back out of the trap. Wilson complied. Staff handcuffed Wilson and he was taken off the unit.

Hartzheim remained at Plaintiff's cell front at all times during this incident, but for the brief moment he left to call Sgt. Johnston after Wilson first informed him of Wilson's desire to move cells. Hartzheim did not anticipate that Wilson would attack Plaintiff when Sgt. Johnston walked away to talk to a supervisor. Inmates often make excuses to try and get out of their cells. Nor did Hartzheim observe Wilson being winded after he stopped hitting Plaintiff. Hartzheim is unaware of any medical diagnoses that Plaintiff may have received or any psychological issues that he may have had following this incident.

Following Wilson's attack, Plaintiff was escorted to the Health Services Unit and provided medical attention. Captain Arndt took photographs of Plaintiff's injuries. Hartzheim wrote Incident Report #573729 regarding this incident, and Wilson received Conduct Report #338670. Plaintiff reported to HSU with a slightly swollen right face, with no open cuts or distress noted. Nurse Adeyemo gave Plaintiff ice packs and Tylenol and instructed him to notify HSU if he felt dizzy. Plaintiff neither sustained a fracture nor required x-rays, an MRI, or a hospitalization on August 20, 2023 or anytime thereafter as a result of Wilson's attack.

On August 25, 2023, Plaintiff reported to HSU complaining of headaches and dizziness related to Wilson's August 20, 2023 attack. Plaintiff was advised that he may have suffered a concussion as a result of the August 20, 2023 attack, and was given generic Tylenol to help with headaches and muscle soreness. Plaintiff did not request or receive any other medical attention with respect to the August 20, 2023 incident.

### 3. ANALYSIS

Defendants bring a motion for summary judgment seeking dismissal of the Eighth Amendment claim for their deliberate inference to the serious risk of Plaintiff's cellmate harming him. ECF No. 25 at 1. As an initial matter, the parties agree that Defendants Johnson and Gould were not involved in the incident underlying this case because they were not working on the unit on the day in question. *Id.* at 9–10. As such, the Court accordingly grants Defendants' motion as to Defendants Johnson and Gould because they were not deliberately indifferent to Plaintiff's risk of harm. The Court turns to the question of whether Hartzheim's actions constituted deliberate indifference.

Under the Eighth Amendment, "[a] prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (internal quotation marks and citations omitted). The test for determining whether a prison official was deliberately indifferent to that risk has both an objective and a subjective component. *Id.* The objective component requires the harm to which the prisoner was exposed to be objectively serious. *Id.* Meanwhile, the subjective component, also referred to as the deliberate indifference component, "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To demonstrate an official's actual knowledge of impending harm, inmates may rely on circumstantial evidence. *Id.* "In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Id.* (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)). Complaints that convey a generalized, vague, or stale concern typically do not satisfy this requirement. *Id.* Conversely, a complaint to an official that conveys a specific, credible, and imminent risk of harm typically will support an inference that the official had actual knowledge of the risk. *Id.* A prison official must respond reasonably to a known risk of harm, but negligence or even gross negligence is not enough to show a constitutional violation. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Instead, the official's response must be so inadequate that it amounts to a reckless disregard for the risk, *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005), and "effectively condones the attack." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). That a response did not avert the risk does not mean it was unreasonable, and the standard is always "reasonableness in light of the surrounding circumstances." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

In this case, the Court's analysis turns on whether Hartzheim acted reasonably under the circumstances in response to Wilson's threat to Plaintiff. "All that one can expect—and all the Constitution demands—is that officials respond reasonably to the situation presented." *Pulera v. Sarzant*, 966 F.3d 540, 556 (7th Cir. 2020). On the record before it, the Court finds that no reasonable jury could conclude Hartzheim was deliberately indifferent to a serious risk to Plaintiff's safety. The first question is whether

Hartzheim acted reasonably to prevent the attack; the second is whether Hartzheim acted reasonably in responding to the attack.

The Court first addresses whether Hartzheim reasonably responded to prevent the attack. To begin, nothing in the record shows any indication that Hartzheim had any reason to believe Wilson imminently intended to attack Plaintiff. Indeed, it is undisputed that Hartzheim asked Wilson if he had plans to hurt Plaintiff and Wilson responded that he did not. Thereafter, Hartzheim immediately called his supervisor, Sgt. Johnson, to address the situation. Aside from this brief conversation, Hartzheim remained at Plaintiff's cell front at all times during this incident. The parties agree that Hartzheim did not anticipate that Wilson would attack Plaintiff when Sgt. Johnston walked away to talk to a supervisor.

Plaintiff argues that Hartzheim could have, and should have, separated Wilson and Plaintiff immediately upon learning about the threat. ECF No. 31 at 1-2. Hartzheim maintains that he could not have removed Wilson from the cell without approval from a supervisor. ECF No. 27 at 2. The Court does not, however, find that issue to be conclusive; taking the facts in the light most favorable to Plaintiff, the Court will therefore assume that Hartzheim had the ability to at least temporarily separate Plaintiff from Wilson while a supervisor was contacted.

Even so, however, Hartzheim's failure to immediately separate Wilson from Plaintiff does not equate to deliberate indifference. Though immediately separating Plaintiff and Wilson "may have been a better choice, [Hartzheim's] actions did not cross the line from negligently enabling the attack to recklessly condoning it." *See Giles v. Tobeck,* 895 F.3d, 510, 514 (7th Cir. 2018). Even if a jury found that Hartzheim had better

Page 8 of 12

Case 2:23-cv-01194-JPS    Filed 07/21/25    Page 8 of 12    Document 33

alternatives, "that doesn't create a triable issue as to whether he acted unreasonably." *Talley v. Gloede*, No. 23-CV-693-JDP, 2025 WL 315386, at *3 (W.D. Wis. Jan. 28, 2025). "The constitution does not require jails to adopt best practices." *Id.* (citing *Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020)).

The Court finds that a reasonable prison official in Hartzheim's position would not have appreciated that not immediately separating the two inmates while contacting a supervisor, with a prison official monitoring the situation and no known weapons present, created a substantial risk of harm to Plaintiff's safety. *See Crockett v. Jeffreys,* No. 3:21-CV-00570-MAB, 2024 WL 4132998, at *5 (S.D. Ill. Sept. 10, 2024) (finding no deliberate indifference and that prison officials acted reasonably when they "promptly informed placement of [the plaintiff's] situation and requested a cell reassignment," even though the plaintiff remained in his cell with the threatening inmate for several weeks afterwards); *Patton v. Reagle*, No. 3:23-CV-505-JD-MGG, 2023 WL 7041324, at *2 (N.D. Ind. Oct. 26, 2023) (Although a second assault subsequently occurred after the plaintiff told officials of the first attack, "Officer Snow and Sergeant Adams, however, took reasonable steps in response to the assault by reporting the issue to their superiors."); *Quarles v. Sevier*, No. 3:13-CV-843, 2016 WL 1244026, at *5 (N.D. Ind. Mar. 30, 2016) (finding the evidence demonstrated that the defendant took a "reasonable affirmative step" by immediately contacting his supervisor who could authorize a cell move). Hartzheim's actions, or lack thereof, at best, may show he was negligent to a serious risk to Plaintiff's safety; however, nothing in the record supports a finding that Hartzheim actions were so reckless as to effectively condone the attack by

allowing it to happen. As such, the Court does not find that Hartzheim was deliberately indifferent to the serious risk of Wilson attacking Plaintiff.

Second, once the attack began, the Court finds the undisputed evidence shows that Hartzheim responded reasonably to protect Plaintiff from Wilson's attack. Hartzheim immediately notified his supervisor of the attack, ordered Wilson to stop the attack, and threatened Wilson with OC spray. Although the record is not clear exactly how long the attack lasted, it appears to have been relatively brief incident and Wilson was removed from the cell shortly thereafter. While Hartzheim "plausibly could have removed [Plaintiff] from the situation even faster and thereby reduced or prevented his injuries…the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *See Giles*, 895 F.3d at 514 (internal quotations omitted). Based on Hartzheim's actions to attempt to stop the attack, no reasonable jury could find that Hartzheim effectively condoned the attack once it started. Thus, the Court finds that Hartzheim reasonably responded to the attack and was therefore not deliberately indifferent to the risk of Plaintiff' serious harm.

In sum, the undisputed facts before the Court do not support a finding that Defendants were deliberately indifferent to Plaintiff's serious risk of harm. The parties agree that Johnson and Gould did not have any personal involvement with Plaintiff's attack. The Court finds that Hartzheim reasonably responded to the threat to Plaintiff's safety. As such, the Court finds that no reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious risk of harm. The Court emphasizes that it is incredibly unfortunate that Plaintiff experienced this violent attack; however, the record simply does not support a finding of

deliberate indifference. Thus, the Court will accordingly grant Defendants' motion for summary judgment and will dismiss this case with prejudice.[2]

## 4. CONCLUSION

For the reasons explained above, the Court grants Defendants' motion for summary judgment on the merits. The Court has carefully reviewed the record and finds that Defendants are entitled to judgment as a matter of law. As such, no claims or defendants remain, and the Court will therefore dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 24, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of July, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[2] Defendants also moved for summary judgment based on qualified immunity. ECF No. 25 at 13. Because the Court grants summary judgment on the merits and finds no deliberate indifference based on the undisputed facts, the Court need not reach the question of qualified immunity.

> This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.